# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| David Papenfuss, | ) | |
| | ) | |
|   *Plaintiff*, | ) | |
| | ) | |
|   v. | ) | Case No: 16 C 50368 |
| | ) | |
| Butitta Bros. Auto., Inc., | ) | |
| | ) | |
|   *Defendant*. | ) | Judge Frederick J. Kapala |

## ORDER

Defendant's motion for summary judgment [28] is granted in part and denied in part. The motion is denied as to Count I except as to plaintiff's claim for hostile work environment, which is dismissed. The motion is denied as to Count II. The motion is granted as to Counts III, IV, and V.

## STATEMENT

  Plaintiff, David R. Papenfuss, brings claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., and Illinois common law arising from plaintiff's termination of employment by defendant, Butitta Brothers Automotive, Inc. ("Butitta Bros."). Before the court is defendant's motion for summary judgment. For the reasons stated below, defendant's motion for summary judgment is granted in part and denied in part.

### I. BACKGROUND

  The facts are taken from the pleadings, the parties' statements of undisputed facts,[1] the parties' responses thereto, the parties' supplemental briefing as ordered by the court, and the evidence submitted in support.[2] All the facts detailed are undisputed unless otherwise stated.

---

[1] Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the party contends there is no genuine issue" for trial. Ammons v. Aramark Uniform Servs., Inc., 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires the non-moving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. See Schrott v. Bristol-Myers Squibb Co., 403 F.3d 940, 944 (7th Cir. 2005). A litigant's failure to respond to a Rule 56.1 statement results in the court admitting the uncontroverted statement as true. Raymond v. Ameritech Corp., 442 F.3d 600, 608 (7th Cir. 2006).

[2] Defendant submitted a "Statement of Additional Facts" contained within its response to plaintiff's Statement of Additional Material Facts. See Defendant's Response to Plaintiff's Statement of Additional Material Facts ¶¶ 41-48. The court allowed plaintiff to respond to these additional facts.

Plaintiff worked at defendant's Oregon, Illinois shop from 2011 to 2015 after being hired for its Freeport, Illinois shop in 2008. Def.'s Statement of Material Facts in Supp. of Mot. for Summ. J. ("SMF") ¶¶ 1, 5. The Oregon shop generally had five employees while plaintiff worked there. Typically, there would be two employees working at the front desk. One of them was a manager and the other was either an assistant manager or an automotive service advisor ("service advisor"). The other three employees were hourly lube technicians/tire technicians/porters ("technicians"), who worked in the back of the shop.[3] Plaintiff was hired at least as a service advisor, though plaintiff received a copy of job descriptions for both the service advisor and technician positions when he was hired and performed some of the tasks of a technician at least occasionally. Id. ¶ 1; Pl.'s Statement of Additional Material Facts ("AMF") ¶ 1. The pertinent similarity between the "essential duties and responsibilities" listed between the two jobs is that the technician position required driving responsibilities and the service advisor position required the employee to hold a current driver's license with a good driving record and to assist in customer transportation and vehicle pick-up and delivery. SMF ¶ 1. That plaintiff sometimes handled some of the essential duties and responsibilities of a technician was not uncommon at either the Oregon shop or any of defendant's shops.[4] According to the manager at the Oregon shop, Shawn Willis, all five employees helped out with tasks formally assigned to the technicians. However, the parties dispute whether this was required of the service advisors and how often service advisors performed the technicians' tasks. Id. ¶¶ 22, 42.

In the middle or end of October 2015, plaintiff suffered the first of two seizures. Id. ¶ 11. On October 26-27, 2015, plaintiff's doctor drafted notes advising defendant that plaintiff could not "drive" or "work in the shop" and could only "work in the office." Id. ¶¶ 13-14. On November 30, 2015, another one of plaintiff's doctors advised defendant that plaintiff could only perform work as long as it did not involve ladders, heights, hazardous materials, manual work with heavy equipment, or driving. Id. ¶ 27.

Plaintiff returned to work on October 29, 2015. The next day, plaintiff's manager, Shawn Willis, told plaintiff he would have to work in the back of the shop, contrary to plaintiff's doctor's orders. Id. ¶¶ 18, 25; AMF ¶ 3. Plaintiff testified that he was at least partly aware of a "Skype" message sent by Willis to another employee that day, in which Willis said of plaintiff: "Fucking guy comes back and can't drive, can't work in the shop. I send his ass out back to do some janitor work and it's not five minutes later that he's pumping waste oil all over the parking lot." Id. Further, plaintiff is aware of other messages in which Willis referred to plaintiff's seizure as an "episode"; Willis noted of plaintiff: "[I]f this guy is going to be having seizures it'll be at least 6 months before he can drive and he refuses to get behind the wheel whatsoever"; and Willis referred to Plaintiff's medical issue as "Dave's drama." Id. In addition, soon after plaintiff returned to work, Willis left for plaintiff a list of tasks on the shop's front counter for plaintiff to complete upon returning to the

---

[3] While it appears from the technician's job description that there are "lead" and other types of technicians throughout Butitta's various branches, the record is silent as to whether these distinctions were present at either the Freeport or Oregon shops.

[4] At the Freeport location, plaintiff drove vehicles four to five times per week, performed service work, and operated machinery. SMF ¶¶ 43, 45.

2

shop that defied plaintiff's doctor's orders. SMF ¶ 24. The list included items that required plaintiff to perform tasks in the back of the shop but did not include tasks related to driving or maintenance. Id. Willis never spoke to him about performing these tasks, though Willis did make comments indicating that he expected plaintiff to drive. Id.; AMF ¶ 4.

In December 2015, defendant's president, Jon Thompson; Tracy Cooling, an office manager for defendant; and Joe Vettore, general manager of Butitta Bros. met with plaintiff and informed him that he needed to drive for his job. SMF ¶ 28. Plaintiff then contacted his doctors to ask if he could drive, but was told no. Id. ¶ 29. This would be followed up with a doctor's note reaffirming the November 30 note and informing defendant that this would be the case until at least February 29, 2016. Id. ¶ 30. Vettore and Thompson then met with plaintiff again in December and informed plaintiff that he should look for another job due to his inability to drive and perform other essential duties in the technician position. Id. ¶ 31. Plaintiff was formally terminated on December 28, 2015. Id. ¶ 33.

Plaintiff filed a complaint against defendant, bringing a claim for violation of the ADA under a "disparate treatment" theory and "hostile work environment" theory (Count I); denial of reasonable accommodations under the ADA (Count II); violation of plaintiff's rights under ERISA (Count III); intentional infliction of emotional distress (Count IV); and negligent infliction of emotional distress (Count V). Defendant moves for summary judgment as to all claims.

## II. ANALYSIS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Hemsworth v. Quotesmith.Com, Inc., 476 F.3d 487, 489-90 (7th Cir. 2007). In evaluating such a motion, the court's role is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. Id. at 490. The court must draw all reasonable inferences in the light most favorable to the party opposing the motion. Id. "If a party moving for summary judgment has properly supported his motion, the burden shifts to the nonmoving party to come forward with specific facts showing that there is a genuine issue for trial." Cincinnati Life Ins. Co. v. Beyrer, 722 F.3d 939, 951 (7th Cir. 2013) (emphasis omitted). The nonmoving party need not meet, in the court's eyes, the preponderance of the evidence standard, but must still provide more than a "mere scintilla" of evidence to show that there is a genuine issue of material fact. See Nat'l Inspection & Repairs, Inc. v. George S. May Int'l Co., 600 F.3d 878, 882 (7th Cir. 2010).

The ADA, as amended, provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees." 42 U.S.C. § 12112(a). Discrimination claims arise from language in the ADA prohibiting covered entities from "limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee." 42 U.S.C. § 12112(b)(1). A plaintiff may state a claim under the ADA "by advancing either (1) a failure to accommodate theory—that is, the employer failed to provide a reasonable accommodation for the employee's disability—or (2) a 'disparate treatment' theory—that is, the employer treated the employee differently because of her disability." Quinn v. Chi. Transit Auth., No. 17 C 3011, 2018 WL 4282598, at *3 (N.D. Ill. Sept.

3

7, 2018). Further, a plaintiff establishes a hostile work environment claim under the ADA "where an employee experiences harassment that is so severe or pervasive as to alter the conditions of employment and create an abusive working environment." McKay v. Vitas Healthcare Corp. of Ill., 232 F. Supp. 3d 1038, 1047 (N.D. Ill. 2017) (quoting Mannie v. Potter, 394 F.3d 977, 982 (7th Cir. 2005)).

### A. ADA Failure-to-Accommodate Claim (Count II)

To support a failure-to-accommodate claim under the ADA, a plaintiff bears the burden of presenting sufficient evidence that "(1) [he] is a person with a disability as defined by the ADA; (2) the defendant knew about [his] disability; and (3) the plaintiff is otherwise qualified to perform the essential functions of the job sought, with or without reasonable accommodation." Slaugher v. Winston & Strawn LLP, No. 15 C 5851, 2018 WL 3405476, at *4 (N.D. Ill. July 12, 2018) (citing Winfrey, 259 F.3d at 614). "A plaintiff who clears this first hurdle must then show that her employer failued to provide a reasonable accommodation." Id.

The parties do not dispute either of the first two prongs. The court will proceed to determine whether plaintiff was qualified to perform the essential functions of the job with or without a reasonable accommodation. This, in turn, requires the court to first (1) define what the "essential functions" of plaintiff's job were and then (2) determine whether plaintiff could have performed those "essential functions" with (or without) a reasonable accommodation.

The first task for the court in deciding plaintiff's failure-to-accommodate ADA claim is to determine what the essential functions were of plaintiff's position at Butitta Bros. "We presume that an employer's understanding of the essential functions of the job is correct, unless the plaintiff offers sufficient evidence to the contrary." Gratzl v. Office of the Chief Judges of the 12th, 18th, 19th, & 22nd Judicial Circuits, 601 F.3d 674, 679 (7th Cir. 2010); see also Miller v. Ill. Dep't of Transp., 643 F.3d 190, 198 (7th Cir. 2011). However, courts should not "rubber-stamp an employer's assertions about which functions are essential," because doing so would allow employers to undermine the ADA by creating new essential functions as "post hoc rationalizations for unlawful discrimination." Hawkins v. George F. Cram Co., 397 F. Supp. 2d 1006, 1020-21 (S.D. Ind. 2005). Courts employ various factors to determine whether a particular duty is an "essential function," including (a) the employee's job description, (b) the employer's opinion, (c) the amount of time spent performing the function, (d) the consequences for not requiring the individual to perform the duty, and (e) the actual practices in the employer's workplace. Stern v. St. Anthony's Health Ctr., 788 F.3d 276, 285 (7th Cir. 2015); Gratzl, 601 F.3d at 679; 29 C.F.R. § 1630.2(n)(3). Whether a function is essential is a question of fact. Brown v. Smith, 827 F.3d 609, 613 (7th Cir. 2016).

Turning to the first factor, plaintiff's "job description," the parties rigorously dispute whether plaintiff was hired as both an hourly lube technician and a service advisor or just a service advisor and collaterally dispute the effect of plaintiff being handed both job descriptions upon being hired. The parties agree that at the time plaintiff was hired he was given written job descriptions for the Automotive Service Advisor and Hourly Lube Technician/Tire Technician/Porter positions. SMF ¶ 1. Defendant urges that this shows that plaintiff was required to do a technician's work. Defendant has a good point. Plaintiff testified that he performed almost all of the tasks of the technician—many of which required driving and working in the back of the shop on maintenance

4

tasks. Defendant argues that this evidence demonstrates that plaintiff was hired for both positions. But there is another, equally plausible explanation. If, as set forth in the list of a service advisor's essential duties, the service advisor must supervise and direct the technicians and must monitor and evaluate the technicians' performance. See Pl.'s Dep. Ex. p. 14-15. It would make perfect sense that the service advisor would be apprised of what a technician does, without expecting him to actually do the work. A reasonable jury could conclude that plaintiff's understanding and helping out with technician tasks was a byproduct, but not required obligation, of his job as a service advisor. Thus, the court finds that this factor weighs heavily in favor of denying summary judgment.

The second factor, the employer's opinion, favors defendant slightly. Courts presume that the employer's judgment as to what is an essential function of the job is correct unless the plaintiff offers sufficient evidence to the contrary. Gratzl, 601 F.3d at 679; see also DePaoli v. Abbott Labs., 140 F.3d 668, 674 (7th Cir. 1998) ("Although we look to see if the employer actually requires all employees in a particular position to perform the allegedly essential functions, we do not otherwise second-guess the employer's judgment in describing the essential requirements for the job." (citation omitted)); Bilinsky v. Am. Airlines, Inc., No. 16 C 4253, 2018 WL 4181481, at *5 (N.D. Ill. Aug. 31, 2018). Here, it is undisputed that the persons operating Butitta Bros. contend that plaintiff was hired for both positions and expected plaintiff to drive automobiles and work in the shop. Moreover, plaintiff conceded that Thompson and Vettore believed that he needed to drive for his job when they met with him at the December 2015 meeting. SMF ¶¶ 28, 31. However, it is worth noting that the record is silent as to what defendant expected back in 2008 when plaintiff was first hired. That the expectations of defendant come from testimony given in many years later may be viewed as self-serving by a reasonable jury. Accordingly, this factor perhaps weighs in favor of summary judgment, but does not weigh on the court's overall analysis heavily.

The third factor, the amount of time spent on the activity, favors denying summary judgment. Plaintiff argues that he only performed the essential duties and responsibilities of the technicians occasionally to help out, AMF ¶ 1, whereas Willis testified that plaintiff split his time half-and-half between technician and service advisor activities, with more attention to technician duties on Saturdays, SMF ¶ 7. This straight-forward factual dispute would be best decided by a jury.

The fourth factor, the consequences for not requiring the individual to perform the duty, weighs in favor of denying summary judgment. Defendant pads the record with its own evidence that it suffered harm as a result of plaintiff's inability to drive or work in the back of the shop affected the Oregon shop's operations. They argue that this required other technicians to perform the technician work that plaintiff had been performing before his disability. Id. ¶¶ 19, 23; AMF ¶¶ 8, 12-13. Vettore testified that stress levels of the other four employees in the Oregon shop increased because all four employees had to pick up all the driving responsibilities previously handled by plaintiff, resulting in later hours for Willis. SMF ¶ 19. This resulted in paying one technician overtime to make up for plaintiff's inability to perform driving and maintenance tasks. Id. ¶ 21.

However, one must look no further than Erik Steffins, a technician at the Oregon store,[5] to

---

[5]The record states that Steffins was a "mechanic." The court construes this to mean that Steffins was hired as a technician.

see that there is a genuine dispute of fact as to whether defendant actually suffered hardship. Erik Steffins was unable to drive due to losing his driver's license. SMF ¶ 20. It is unlikely that Steffins was going to get his license back soon, as it is undisputed that he lost his license after "killing a guy." Id. ¶ 48. By contrast, aside from the ambiguity over whether plaintiff was even required to perform the tasks of a technician, plaintiff's doctor implied the possibility that plaintiff could resume driving (and maintenance tasks) in six months from the date of his seizure. AMF ¶ 5.[6] The court wonders why such hardship would not result in Steffins' termination but would for plaintiff's. A jury will be in the best position to determine whether this double standard is the result of failure-to-accommodate or not. This factor weighs against summary judgment.

Finally, the fifth factor, the actual experiences in the workplace, favors plaintiff. According to Willis, it was common and expected for service advisors to perform the tasks of technicians. SMF ¶¶ 20, 22, 46-47; Deposition of Joe Vettore ("Vettore Dep.") 19:5-7. Willis—who had been a service advisor at one time for defendant and represents the only other service advisor with testimony in the record—testified that as a service advisor it was common for him to perform the tasks of the technicians. Deposition of Shawn Willis ("Willis Dep.") 13:1-20. The court acknowledges that a reasonable jury could put great and even dispositive weight on plaintiff's concession that his actual practices in the workplace included "all" of the technician tasks aside from "maintenance services," "system flushes," and "light brake repairs," which might mean that, before plaintiff suffered a disability in October 2015, plaintiff would handle the driving responsibilities listed for both positions and perform various tasks of the technician, such as racking vehicles, tire removal, and shop maintenance in the back of the shop. SMF ¶ 41.

But aside from Willis's testimony, the remaining evidence creates a question as to whether plaintiff was actually required to perform these tasks, as other employees were not sure that they were required of plaintiff or any other service advisor. Richard Alf, plaintiff's coworker at the Freeport location, testified that plaintiff was not required to perform driving and maintenance duties as part of his job as a service advisor and simply did it to help out. AMF ¶ 18. In fact, there was no objection to Alf's qualification to testify that plaintiff had no driving responsibilities at the Freeport location. Dep. of Richard Alf 17:17-20. The affidavits submitted by former co-workers Sylvia Gale, James Levan, and Noah Rodriguez further indicate that plaintiff would only work in the back of the shop or drive vehicles when needed. AMF ¶¶ 20-22.

It is true, as defendant notes, that plaintiff's job description as a service advisor includes as essential duties assisting in pick-ups, deliveries, and customer transportation. But putting aside for the moment the fact that "assisting" does not necessarily include actual driving, and even though it would have been very easy for defendant to plainly state that a service advisor must drive, it appears that for defendant some activities which are listed as essential duties of the job are not required of Steffins. Assuming Steffins' job description as a technician required him to actually transport customers rather than just assist as a service advisor would, it appears Steffins was allowed to work

---

[6] While it is undisputed that plaintiff sought an exemption from performing these tasks for 6 months, AMF ¶ 5, there is a discrepancy in the facts. Plaintiff first obtained the doctor's note in October 2015 and was told he could not perform driving and maintenance tasks through February 2016. SMF ¶¶ 13-14, 28, 30. Whether it was 4 or 6 months does not alter the court's analysis.

even though he was unable to drive. SMF ¶ 20. Finally, it is worth noting that no one disputes plaintiff's observation and statement that he always wore a service advisor's uniform while in the workplace. AMF ¶ 11. The court finds that the fifth factor weighs against summary judgment.

In sum, at least four of the five Stern factors weigh in favor of denying summary judgment. In one sense, the court does not have to wonder about what the essential functions of a service advisor were. Defendant lists them for United States in the Butitta Bros. job description of its service advisor position, which was given to plaintiff. If, as Willis contends, a substantial amount of a service advisor's time is to be devoted to driving and maintenance duties, one would expect them to be listed in the "Essential Duties and Responsibilities" section of the job description. It would certainly be a simple matter to do so. But any mentions of maintenance tasks or substantial work to be performed in the back of the shop is conspicuously absent, and the service advisor's duties with respect to driving are only barely more conspicuous in the job description. Considering this and the other Stern factors, and viewing the evidence in the light most favorable to plaintiff, the court concludes there is a triable question of fact as to whether driving and maintenance tasks were essential functions of plaintiff's job.

However, even if a jury found that driving and maintenance tasks were essential functions of plaintiff's position, a reasonable jury could nevertheless find that plaintiff has propounded a triable issue as to whether he is a "qualified individual." The ADA defines a "qualified individual with a disability" in terms of the individual's ability to perform the essential functions of a job. See 42 U.S.C. § 12111(8).[7] In other words, if the employee cannot perform an essential function with or without a reasonable accommodation, the employee is not a "qualified individual" and therefore the employer has no duty to accommodate because "the essential-job function inquiry does not require employers to lower their standards by altering a job's essential functions." E.E.O.C. v. Ford Motor Co., 782 F.3d 753, 764 (6th Cir. 2015) (citing 29 C.F.R. § 1630.2(n)). The burden is on the employee to propose a reasonable accommodation that would allow him to perform the essential functions of his job. Winfrey v. City of Chicago, 259 F.3d 610, 614 (7th Cir. 2001).

Plaintiff has met his burden. Plaintiff proposed an accommodation to be exempted from performing purportedly essential functions—that is, maintenance tasks and actually driving a motor vehicle—for six months, according to his doctor's notes. He did not ask to be accommodated in any way for tasks which he feels were required of him as a service advisor. With the accommodation, plaintiff would be able to fulfill his allegedly essential duties and responsibilities and could continue to help out with driving and maintenance tasks after the six-month period had elapsed. Defendant does not dispute these contentions other than to assert that driving and maintenance tasks were essential duties of plaintiff's job, a contention the court has already rejected. Accordingly, the court denies defendant's motion for summary judgment on this claim.

### B. ADA Disparate Treatment Claim (Count I)

---

[7] A threshold issue for a plaintiff to demonstrate he is qualified is to show that he satisfies "the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc." Kotaska v. Fed. Express Corp., No. 16-CV-9321, 2018 WL 3993722, at *11 (N.D. Ill. Aug. 21, 2018) (quoting Weiler v. Household Fin. Corp., 101 F.3d 519, 524 (7th Cir. 1996)). The parties do not dispute that plaintiff satisfies the prerequisites for either the hourly lube technician position or the service advisor position.

7

To prove a violation of the ADA under a disparate-treatment theory, a plaintiff must show that: "(1) he is disabled; (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the adverse job action was caused by his disability." Roberts v. City of Chicago, 817 F.3d 561, 565 (7th Cir. 2016). The nature of plaintiff's disparate-treatment claim is that defendant violated the ADA by discriminating against him by terminating his employment because of his disability. As noted in the previous section, the court has already found that plaintiff has satisfied his burden with respect to the first two prongs, which are also present in the failure-to-accommodate test. The court thus proceeds to the "causation" prong, which requires the plaintiff to prove that he was terminated "because of" his disability.[8] The Seventh Circuit has instructed district courts to move away from the "direct" and "indirect" methods of proving causation. Rather, courts are to consider "whether the evidence [when considered as a whole] would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge." Monroe v. Ind. Dep't of Transp., 871 F.3d 495, 504 (7th Cir. 2017). Nevertheless, courts are not prohibited from organizing the evidence before them using each method if they so choose, so as long as the evidence ultimately ends up "in a single pile" and is "evaluated as a whole." Lewis v. Wilkie, 909 F.3d 858 (7th Cir. 2018).[9]

In this case, plaintiff's evidence of disparate-treatment discrimination is the same as that for his failure-to-accommodate claim. While "[a] failure to accommodate claim is separate and distinct from a claim of discriminatory treatment under the ADA . . . failure to accommodate and disparate treatment allegations may stem from identical, interrelated facts." Quinn, 2018 WL 4282598 at *5

---

[8]The 2008 amendments to the ADA changed the causation language prohibiting discrimination "because of" a disability to instead prohibit discrimination "on the basis of" a disability. Silk v. Bd. of Trustees, Moraine Valley Cmty. Coll., Dist. No. 524, 795 F.3d 698, 706 (7th Cir. 2015). The Seventh Circuit has acknowledged that it has not yet resolved whether " 'on the basis of' means anything different from 'because of,' " and "it is an open question whether the but-for standard ... survived the [2008] amendment to the ADA." Id. (quoting Serwatka v. Rockwell Automation, Inc., 591 F.3d 957, 959 (7th Cir. 2010)); cf. Milsap v. City of Chi., No. 16 C 4202, 2018 WL 488270, at *6 (N.D. Ill. Jan. 19, 2018) (finding although it is an "open question in this Circuit as to whether the 2008 amendments to the ADA opened the door to" a lower standard, courts continue to "employ the 'but for' standard").

[9]The parties focus their burden-shifting analysis almost exclusively on whether Eric Steffins is a comparable employee. While the court considers facts surrounding Eric Steffins' employment activity in its analysis of the central standard articulated in Monroe and Rowlands, the evidence in the record on Eric Steffins is not suited to the burden-shifting method analysis in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See also David v. Bd. of Trustees of Cmty. College Dist. No. 508, 846 F.3d 216 (7th Cir. 2017). In ADA cases, a plaintiff may rely on two different methods of proof to survive a motion for summary judgment. The first is the "direct method," in which a plaintiff must show a genuine issue of material fact with respect to the three elements in Roberts, see supra. The second method, the "indirect method," is the burden-shifting approach laid out in McDonnell-Douglas, which is used for situations in which an employee claims that an employer's reasons for terminating the employee's position are pretextual—or, in other words, where there is no direct proof of discrimination. Here, however, the parties do not dispute that defendant's actions in this matter were motivated by plaintiff's disability, negating the need for the indirect method to be employed at all. This is a case about whether defendant's termination of plaintiff's employment due to his disability occurred despite plaintiff being otherwise qualified to perform the essential functions of his position with or without accommodation. See also BLOOMBERG BNA, EMPLOYMENT DISCRIMINATION LAW Ch. 13.VII.A.3.a (5th ed. 2017) (explaining that a plaintiff's decision to employ one method versus the other "depends on whether the plaintiff's disability actually motivated the employer's decision"). Accordingly, the court will subscribe to the Seventh Circuit's guidance not to rely on the burden-shifting method when not necessary or adequately demonstrated by the parties.

8

(citations omitted). Here, the facts relied on by plaintiff for each theory do not materially differ. Plaintiff claims that he was terminated because his disability prevented him performing non-essential tasks. In contrast to Steffins retaining employment without being able to fulfill an essential function of his job, plaintiff was terminated because of his disability. Plaintiff had never been told he was required to drive or work in the back of the shop until <u>after</u> he suffered his seizure. A plaintiff "is not required to make out a <u>prima facie</u> case, so long as there is <u>some</u> evidence from which one can infer that the employer took adverse action against the plaintiff on the basis of a statutorily proscribed criterion." <u>Thomas v. Norfolk S. R. Co.</u>, No. 09 CV 7383, 2013 WL 791449, at *6 (N.D. Ill. Mar. 4, 2013) (emphasis added). Plaintiff has met his burden, and accordingly, the court denies defendant's motion for summary judgment with respect to plaintiff's disparate-treatment claim as well.

### C. Hostile Work Environment (Count I)

Plaintiff claims that he was subject to a hostile work environment in violation of the ADA.[10] The plaintiff bears the burden of demonstrating that (1) the work environment was both objectively and subjectively offensive; (2) the harassment was based on membership in a protected class or in retaliation for protected behavior; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability. <u>Robinson v. Colvin</u>, No. 13 C 2006, 2016 WL 1161272, at *4 (N.D. Ill. Mar. 24, 2016) (noting that a prima facie case under the ADA for hostile work environment claims is the same if brought under Title VII). The third element of the prima facie case for hostile work environment "is in the disjunctive—the conduct must be <u>either</u> severe <u>or</u> pervasive." <u>Vance v. Ball State Univ.</u>, 646 F.3d 461, 469 (7th Cir. 2011), <u>aff'd</u>, 570 U.S. 421 (2013). In determining whether a plaintiff has met these various elements, courts must consider all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating; or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Silk v. City of Chicago</u>, 194 F.3d 788, 804 (7th Cir. 1999).

He supports this claim with the following facts, which are also used as the basis for his claims for intentional infliction of emotional distress and negligent infliction of emotional distress, which are discussed in section D. First, plaintiff testified that upon plaintiff's return to work Shawn Willis told plaintiff he would have to work in the back of the shop, contrary to plaintiff's doctor's orders. Plaintiff testified specifically to the following colloquy that took place the day plaintiff returned to work after his seizure:

Q: And what did Shawn say and what did you say to him in that conversation?

A: I told him, I says, "Doctor says I cannot drive or work in the shop until I go back to the doctor." And he says, "Well, you need to go out in the shop anyway."

---

[10] The Seventh Circuit has assumed without deciding that the ADA recognizes a claim for hostile work environment. See <u>Lloyd v. Swifty Transp., Inc.</u>, 552 F.3d 594, 603 (7th Cir. 2009); see also BLOOMBERG BNA, EMPLOYMENT DISCRIMINATION LAW Ch. 20.III.E ("Although the Americans with Disabilities Act (ADA) does not expressly prohibit disability-based harassment, the ADA is modeled after § 703(a) of Title VII, which has been construed to prohibit harassment. Courts generally have held that harassment on the basis of disability is actionable under the ADA.").

9

> Q. What was he asking you specifically to do at that time?
>
> A. Do all the shop work; clean the bays, and, you know, empty the oil and all of that stuff.
>
> Q. So did you then do that job?
>
> A. Yes. I needed a job. Took me a while because I couldn't do it real fast.

Pl.'s Dep. 34:12-24. Further, Willis made numerous comments concerning Willis' expectation that plaintiff drive despite the doctor's orders. Id. 35:18-24, 36:17-24. Willis testified that he saw plaintiff's doctor's notes and knew that plaintiff could not "drive" or "use equipment," but as to cleaning in the back of the shop, Willis testified that he was not sure what shop duties meant and "wasn't aware that [plaintiff] couldn't take out garbage." Willis Dep. 62:13-24. However, Willis did not compel plaintiff to perform any tasks other than cleaning in the back of the shop. Pl.'s Dep. 34:18-21.

Second, plaintiff testified to certain "Skype" messages sent by Willis that he contends contributed to a hostile work environment: (a) Willis said of plaintiff: "Fucking guy comes back and can't drive, can't work in the shop. I send his ass out back to do some janitor work and it's not five minutes later that he's pumping waste oil all over the parking lot," AMF ¶ 3; (b) Willis referred to plaintiff's seizure as an "episode," id.; (c) Willis noted of plaintiff: "[I]f this guy is going to be having seizures it'll be at least 6 months before he can drive and he refuses to get behind the wheel whatsoever," id.; and (d) Willis referred to plaintiff's medical issue as "Dave's drama," id.

Third, plaintiff testified that Willis left for plaintiff a list of tasks on the shop's front counter for plaintiff to complete upon returning to the shop that defied plaintiff's doctor's orders. Pl.'s Dep. 29:21-30:24. The list included items that required Willis to perform tasks in the back of the shop but did not include tasks related to driving or maintenance. Willis Dep. 63:11-65:12. Plaintiff testified that Willis never spoke to him about performing these tasks. P.'s Dep. 31:4-6. The court will apply these facts to plaintiff's remaining claims below.

Plaintiff cannot carry his burden with respect to the first element. Even assuming that plaintiff has demonstrated that the work environment was subjectively offensive (a point that defendant does not dispute), a workplace only rises to the level of an objectively hostile work environment if it is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Alexander v. Casino Queen, Inc., 739 F.3d 972, 982 (7th Cir. 2014). Courts consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Rodriguez v. Children's Home & Aid Soc'y, No. 16-CV-05225, 2018 WL 620059, at *12 (N.D. Ill. Jan. 30, 2018) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998)); see also Silk, 194 F.3d at 805-06 (denying a hostile work environment claim where the plaintiff was verbally harassed by multiple officers, including being called a "useless piece of [vulgarity]" and a "limited duty phony"; was given negative performance reviews; and was punished through sanctions such as being sent home to get his regulation shoes).

In the court's opinion no reasonable jury could find that Willis' disagreements with the nature of plaintiff's doctor's notes and expressing frustration at plaintiff's inability to perform tasks that he expected plaintiff to complete were objectively offensive under a totality-of-the-circumstances analysis. Rather, Willis' statements to plaintiff were made on a handful of occasions and do not contain the typical indicia of hostility, such as name-calling, offensive utterances, physical threats, or acts of humiliation. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). Further, Willis' various messages to other employees about plaintiff's condition and job performance were sent to other employees, not plaintiff, and thus are examples of "second hand harassment," which as a matter of law are not as impactful as harassment directed at the plaintiff. Nichols, 755 F.3d at 602.[11] While Willis testified that he spoke with plaintiff about these tasks "[a]bout every day," Willis Dep. 65:12, both Willis and plaintiff testified that he did not require plaintiff to actually perform any task that required him to be in the back of the shop, id. 65:3-6; Pl.'s Dep. 29:14-18, 30:14-17, 31:4-10, and that Willis and the other technicians completed the tasks for Willis. This can hardly amount to an "abusive working environment," particularly when plaintiff himself had also used unprofessional language as well. SMF ¶ 17. Some of his remarks may merely demonstrate that Willis may not have properly understood plaintiff's doctor's orders. In addition, these same considerations preclude a reasonable jury from finding for plaintiff on the third element—that is, whether defendant's conduct was severe or pervasive. Accordingly, the court finds that plaintiff has failed to meet his burden to demonstrate that Willis' comments to him created an objectively hostile work environment, and grants defendant's motion for summary judgment with respect to this claim.

### D. Intentional Infliction of Emotional Distress (Count IV) and
### Negligent Infliction of Emotional Distress (Count V)

Plaintiff also brings claims for intentional and negligent infliction of emotional distress. In Illinois, the Illinois Human Rights Act ("IHRA") makes it a "civil rights violation . . . [f]or any employer to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination or citizenship status." 775 ILCS 5/2-102(A). This includes disability discrimination. Id. 5/1–103(I).

Pertinently, the IHRA "preempts all state law claims seeking redress for a 'civil rights violation' within the meaning of that statute." Krocka v. City of Chicago, 203 F.3d 507, 516 (7th Cir. 2000) (dismissing plaintiff's intentional infliction of emotional distress claim because defendant's comments were offensive only for referring to plaintiff's disability). "[W]hether the IHRA preempts a common law tort claim depends upon whether the tort claim is inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the IHRA itself." Bergholz v. John Marshall Law Sch., No. 18 C 3, 2018 WL 5622052, at *6 (N.D. Ill. Oct.

---

0. The parties do not dispute the fact that plaintiff was "partially aware" of these Skype messages. The court fails to understand how plaintiff could be simply "partially aware" of these messages. Perhaps plaintiff saw these messages on Willis' computer screen but could not discern what they were about or to whom they were sent. But in any case, plaintiff's evidence does not establish the type of evidence required for a hostile work environment claim.

30, 2018). A claim is independent of the IHRA "if the conduct would be actionable even aside from its character as a civil rights violation because the IHRA did not furnish the legal duty that the defendant was alleged to have breached." Id.; see also Phillips v. Exxon Mobil Corp., No. 17 C 07703, 2018 WL 3458286, at *5 (N.D. Ill. July 18, 2018) ("Offensive conduct may give rise both to a claim for [intentional infliction of emotional distress] and to a claim under the IHRA, so long as the former does not rest on the legal responsibilities created by the latter."). Otherwise, a federal court has no jurisdiction to adjudicate state tort claims that, in essence, seeks the same redress a plaintiff could seek in a claim for a civil rights violation pursuant to the IHRA.

Here, plaintiff relies completely on facts that make up his hostile work environment claim which could be actionable under the IHRA. Plaintiff only cites to facts that are covered by the IHRA's prohibition on discriminating on the basis of disability. All of these facts relate to Willis' discriminatory treatment of plaintiff based on his disability. The record does not support a finding that plaintiff's claim for intentional infliction of emotional distress arises from a different legal duty than his disability discrimination claim. Accordingly, the court grants defendant's motion for summary judgment as to plaintiff's claim for intentional infliction of emotional distress.

Similarly, the IHRA preempts claims for both intentional infliction of emotional distress and negligent infliction of emotional distress when a plaintiff's tort claims are "inextricably linked" to a discrimination claim. As the court has already found that the IHRA preempts plaintiff's claim for intentional infliction of emotional distress, and as plaintiff relies on the same facts for both state tort law claims, plaintiff's claim for negligent infliction of emotional distress is also preempted by the IHRA. Bogie v. PAWS Chi., 914 F. Supp. 2d 913, 918 (N.D. Ill. 2012) (dismissing intentional and negligent infliction of emotional distress claims because "Illinois does not provide a cause of action for emotional distress in the circumstances Bogie has alleged apart from the legal duty deriving from the IHRA"). Thus, the court grants defendant's summary judgment motion as to plaintiff's claim for negligent infliction of emotional distress as well.

### E. ERISA Claim (Count III)

Plaintiff claims defendant terminated him to deprive him of continued participation in defendant's funded employee welfare and benefits program in violation of ERISA § 510, 29 U.S.C. § 1140. To prevail on this claim, plaintiff must demonstrate that "(1) [he] is a member of an ERISA plan, (2) [he] was qualified for the position, and (3) [he] was discharged under circumstances that provide some basis for believing that [defendant] intended to deprive [him] of benefits." Kampmier v. Emeritus Corp., 472 F.3d 930, 943 (7th Cir. 2007). Further, "an ERISA retaliation plaintiff must demonstrate that the employer had the specific intent to violate the statute and to interfere with an employee's ERISA rights." Lucas v. PyraMax Bank, FSB, 539 F.3d 661, 668 (7th Cir. 2008); see also Teamsters Local Union No. 705 v. Burlington N. Santa Fe, LLC, 741 F.3d 819, 826 (7th Cir. 2014) (explaining that the "intent to frustrate the attainment of benefits must have been at least a motivating factor for the adverse action against the plan participant"). Otherwise, "no action lies where the alleged loss of rights is a mere consequence, as opposed to a motivating factor behind the termination." Meredith v. Navistar Int'l Transp. Corp., 935 F.2d 124, 127 (7th Cir. 1991). Defendant moves for summary judgment, arguing that no reasonable juror could conclude that defendant had the specific intent to interfere with plaintiff's ERISA rights. The court agrees.

Plaintiff all but concedes this point in his response to defendant's motion for summary judgment. Plaintiff does not cite one fact in the record. Instead, plaintiff merely rehashes his argument about defendant not sufficiently proving that it sustained undue hardship, which plaintiff appears to argue shows that the only explanation for plaintiff being terminated is that defendant knew plaintiff had a disability. Even if plaintiff had cited to evidence in the record to support this contention,[12] that defendant may have terminated plaintiff solely because of his disability is not pertinent to plaintiff's burden to demonstrate a triable fact as to defendant's specific intent to deprive him of his ERISA rights. The court finds insufficient evidence in the record that a juror could rely on in concluding that defendant had plaintiff's ERISA rights in mind when it terminated him. The court grants defendant's motion for summary judgment on Count III.

### III. CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is granted in part and denied in part. The motion is denied as to Count I except as to plaintiff's claim for hostile work environment, which is dismissed. The motion is denied as to Count II. The motion is granted as to Counts III, IV, and V.

Date: 3/13/2019

ENTER:

_____

FREDERICK J. KAPALA

District Judge

---

[12] Without citing to the record, plaintiff alludes to defendant maintaining Steffins' employment with defendant as circumstantial evidence that plaintiff was terminated because of his disability. Further, without citing to the record, plaintiff alludes to testimony by Jon Thompson, who told plaintiff that he was being terminated because of his medical condition. Even if the court were to consider these factual references, they would be irrelevant to plaintiff's burden to establish defendant's specific intent in denying him his ERISA rights.